THE WILLOW CREEK IRRIGATION CO., A CORPORATION, AND ANDREW N. BJERRE-GAARD, APPELLANTS, *v.* SARAH C. MICHAEL-SON, RESPONDENT.

APPROPRIATION OF WATERS — SEC. 2780, C. L. U. 1888 — TO WHAT REFERS. PERCOLATING WATERS — NOT SUBJECT OF APPROPRIATION.

*Appropriation of Waters — Sec. 2780, C. L. U., 1888 — To What Refers.*

Section 2780, C. L. U. 1888, must be construed to refer to a "natural stream or other natural source of supply," flowing or situated upon the lands over which the sovereignty has dominion, or which forms a part of the public domain, and not to streams, or springs, or other waters arising through

percolation upon land, after it has been segregated from the public domain, and the title thereto has passed into private ownership.

*Percolating Waters — Not Subject of Appropriation.*

Water intermingling with the ground or flowing through it by filtration or percolation, or by chemical attraction, is but a component part of the earth, has no characteristic of ownership distinct from the land itself, and the rules of law applying to the appropriation of surface waters do not apply thereto.[1]

(Decided March 30, 1900.)

Appeal from the Seventh District Court, San Pete County, Hon. Jacob Johnson, *Judge.*

Action to restrain defendant from interfering with the waters of a certain spring, and to quiet title to the use of the water in the plaintiff. From a judgment for defendant, plaintiff appealed. *Affirmed.*

*Wm. K. Reid, Esq.,* and *James W. Cherry, Esq.,* for appellants.

The statute, Sec. 2780, C. L. U. 1888, was held to be valid by this court in the case of *Stowell* v. *Johnson,* 7 Utah, 227.

The trial court decided this case upon the theory that the waters in question arose on defendant's land, after she had acquired title thereto, and for that reason the said waters were appurtenant to the land and not the subject of appropriation.

Such a position is untenable. It is in conflict with all laws relating to water rights. Such a doctrine, at best, would be limited to percolating waters, and could have no

---

[1] *Crescent Min. Co.* v. *Silver King Co.,* 17 Utah, 444.

application to a natural flowing stream. To sustain such a contention would nullify the doctrine of prior appropriation. The source of the waters involved in this case is the same as that of all other water courses in this State. All are supplied by waters issuing from the land of various owners. If one owner can obstruct the waters arising upon his land as against a prior appropriator of the same, all such land owners can do so as well, and whole streams can be dried up, notwithstanding the prior appropriation thereof. Rights by appropriation would be insecure and dependent upon the sufferance of others. Such a doctrine can not be approved by this court. Its effect would be disastrous.

The contention of appellants is in accordance with the established usages, the laws and customs of this and all other States where artificial irrigation is necessary. *Stowell* v. *Johnson, supra; Drake* v. *Earhart,* 23 Pac. (Ida.), 541; *Strickler* v. *City of Colo. Springs,* 26 Pac., 313; *Malad. Val. Irr. Co.* v. *Campbell,* 18 Pac. (Ida.), 52; *Jones* v. *Adams,* 6 Pac. (Nev.), 442.

*Wm. D. Livingston, Esq.,* and *A. H. Christenson, Esq.,* for respondent.

That Section 2780, C. L. U. 1888, is not valid is no contention of the respondent, neither does she attack the doctrine of *Stowell* v. *Johnson,* 7 Utah, 215.

But she insists that said section, when it refers to "any natural stream, water course, lake, or spring, or other natural source of supply," it intends and should be construed as meaning "natural stream, water course, etc.," over which the government, federal and state, have control and over which the United States exercise a proprietary interest, and not as waters the title to which has passed into private ownership. It refers to water which is part of

the public domain or ownership of which has been reserved from grants of public land, and not to waters arising in the lands of private owner after he has acquired such ownership; or to such water so long as it remains upon his claim. *Crescent M. Co.* v. *Silver K. M. Co.*, 54 Pac. (Utah), 247; Black's Pomeroy on Water Rights, Secs. 30, 44, and cases cited.

The primary source of all title to ownership of all lands, waters, channels, water courses, not excluding ownership by appropriation, is in the United States, subject, of course, to the right of the State to prescribe laws for its government and control after it has become the subject of private ownership. 111 Washburn on Real Property, 169; Black's Pom. on Water Rights, Secs. 31, 32; Kinney on Irrigation, Secs. 111, 124, 134.

The United States in parting with its domain always gives the title absolute, extending skyward indefinitely and to the center of the earth, subject only to such restrictions and reservations as minerals, waters, water courses, channels, etc., as provided by local laws, and customs of the several States duly approved by Congress and by such other legislation as Congress deems expedient. Black's Pomeroy on Water Rights, Sec. 32; Lindley on Mines, Secs. 80, 208, 779.

BARTCH, C. J.

This action was brought to restrain the defendant from interfering with the water of a certain spring, and to quiet title to the use of the water in the plaintiffs.

It appears from the findings of fact, which are not disputed, that the plaintiff company is a corporation duly organized and existing under the laws of Utah, and its business is to control and distribute to its stockholders, for the purposes of irrigation, the water of Willow Creek and

its tributaries, in the county of San Pete, State of Utah. The stockholders are owners of land which is being irrigated from that stream, and the plaintiffs are the owners, by appropriation of all the waters flowing therein. In the year 1891, the United States government conveyed by patent to the defendant a certain tract of land, and thereafter water appeared on the land from natural causes and formed a bog or marsh. The water stood still in a natural depression covering about three-fourths of an acre of land, and increased in volume, until 1895, when it flowed in a stream through a natural depression into Willow Creek, and thereafter continued to flow from the bog or marsh into that creek, and the plaintiffs used it with the other water of the stream. In October, 1898, and January, 1899, the defendant by means of a dam, diverted the water flowing from the bog or marsh, and thereby prevented its flowing into Willow Creek, and its use by the plaintiffs. The defendant thus diverted the water, claiming ownership thereof and right to its use upon her land. At the trial the court rendered judgment in favor of the defendant.

The decisive question, to be determined upon this appeal, is, whether the defendant, by virtue of her patent to the land on which the bog or marsh was formed, is the owner of the water in dispute. The appellants contend that, notwithstanding the fact that, at the time the government conveyed the land to the respondent, there was no bog or marsh thereon, nor any water issuing or flowing therefrom, the stream, which afterward began to flow and thenceforward continued to flow therefrom, was a natural stream and subject to appropriation under Sec. 2780, C. L. U. 1888, and that they had a right to and did appropriate the water thereof. The respondent insists that since, at the time the title to the land vested in her, the

water in question had not come to the surface and its existence was unknown, the right to such water passed to her with the title to the land, as a part of the purchase, and was not included within the terms of the statute and not subject to appropriation.

In the section of the statute, referred to, it is provided: " A right to the use of water for any useful purpose, such as for domestic purposes, irrigating lands, propelling machinery, washing and sluicing ores, and other like purposes, is hereby recognized and acknowledged to have vested and accrued, as a primary right, to the extent of, and reasonable necessity for, such use thereof, under any of the following circumstances: 1. Whenever any person or persons shall have taken, diverted, and used any of the unappropriated water of any natural stream, water course, lake, or spring, or other natural source of supply."

Undoubtedly under this provision any person or persons may divert and use of the unappropriated water of any " natural stream, water course, lake, or spring, or other natural source of supply " for any of the purposes mentioned in the statute, but it is evident that the enactment, although comprehensive terms are employed therein in reference to the appropriation and use of water, for the purposes of irrigation, must be construed to mean a " natural stream, or other natural source of supply," flowing or situated upon lands over which the sovereignty has dominion, or which forms a part of the public domain, and not to streams, or springs, or other waters arising through percolation upon land, after it has been segregated from the public domain, and the title thereto passed into private ownership. The statute, therefore, can not be so interpreted as to include a stream flowing from a bog or marsh like the one in the case at bar, which did not make its appearance upon the surface until after the

land had been purchased from the government by a private individual.

When the United States issued its patent to the respondent, neither the bog nor marsh, nor the water in question, was visible upon the land conveyed. Nor was there any known and defined subterranean stream thereon. At that time the water, if it existed at all, was percolating through the soil, or flowing in a subterranean stream, having no defined or known channels, courses, or banks. Water so percolating and flowing forms a part of the realty, and belongs to the owner of the soil. A conveyance or grant by the United States of any part of the public domain to a person, natural or artificial, carries with it the right of filtrating or percolating water, and to streams flowing through the soil beneath the surface, but in undefined and unknown channels, just the same as it carries with it the right to rocks and minerals in the ground which have not been reserved in the instrument of conveyance, or by statute. Water intermingling with the ground or flowing through it by filtration or percolation, or by chemical attraction, is but a component part of the earth, and has no characteristic of ownership distinct from the land itself. In the eye of the law water so commingled and flowing, or motionless, underneath the surface, is not the subject of ownership apart and distinct from the soil. If, however, sub-surface streams of water flow in clearly defined channels, it is otherwise, for then the rules of law applicable to surface streams and waters, apply.

In Gould on Waters, Sec. 280, the author says: "Water percolating through the ground beneath the surface, either without a definite channel, or in courses which are unknown and unascertainable, belongs to the realty in which it is found. The rule that a man may freely

and absolutely use his property, so long as· he does not directly invade that of his neighbor, or consequentially injure his clearly defined rights, is applicable to the interruption of sub-surface supplies of water or of a stream, and the damage resulting therefrom is not the subject of legal redress. The land owner may, therefore, make a ditch to drain his land, or dig a well thereon, or open and work a quarry upon it, or otherwise change its natural condition, although by so doing he interrupts the underground sources of a spring or well on his neighbor's land.

So in Kinney on Irrigation, Sec. 49, it is said: "Percolating waters are those which pass through the ground beneath the surface without definite channels, although the same rules of law govern those which have definite channels, but the course of which is unknown and unascertainable. Where there is nothing to show that the waters of a spring or well are supplied by any defined flowing stream, the presumption will be that they have their source in the ordinary percolations of water through the soil. Percolating waters, and those whose sources are unknown, belong to the realty in which it is found."

In *Bloodgood* v. *Ayers*, 108 N. Y., 400, Mr. Justice Finch, delivering the opinion of the court, said: "Such a spring belongs to the owner of the land. It is as much his as the earth or minerals beneath the surface; and none of the rules relating to water courses and their diversion apply. (*Broadbent* v. *Ramsbotham*, 34 Eng. L. and E., 513; *Rawston* v. *Taylor*, 33 id., 435; *Village of Delhi* v. *Youmans*, 45 N. Y., 362; *Goodale* v. *Tuttle*, 29 id., 466; *Ellis* v. *Duncan*, 21 Barb., 234; *Barkley* v. *Wilcox*, 86 N. Y., 147.) The only exception established by the authorities is that of certain underground streams or rivers which are known and notorious and flow in a natural channel between defined banks. A few exceptions

are admitted to exist, and others may occur; but, outside of these, sub-surface currents or percolations are not governed by the rules and regulations respecting the use and diversion of water courses, and they may be intercepted or diverted by the owner of the land for any purpose of his own."

In *Metcalf* v. *Nelson*, 8 So. Dak., 87, it was said: "As the hidden water in the plaintiff's soil belonged to him as a part of it, he might, by artificial means, separate it from the soil, and it would still belong to him. He might sink a well, into which such water would work its way, and the accumulation in the well would still be his, and subject to his proprietary control."

So in *Frazier* v. *Brown*, 12 Ohio St., 294, it was observed: "The law can not properly limit the ordinarily absolute dominion of the owner of the soil, in respect to things concealed and hidden in the bowels of the earth, nor recognize an adjoining proprietor as having claims upon, or rights in, a thing passing under the surface of his neighbor's land, the existence of which was first revealed by the very act which would constitute the subject matter of his complaint."

And in *Crescent Min. Co.* v. *Silver King Min. Co.*, 17 Utah, 444, this court said: "The waters issuing from the artificial tunnel into the lake are found to be underground, percolating waters from the mining claim of the defendant, and not waters naturally flowing in a stream with a well-defined channel, banks, and course. Under such a state of facts, the law seems to be well settled that water percolating through the soil is not, and can not be distinguished from the soil itself. The owner of the soil is entitled to the waters percolating through it, and such water is not subject to appropriation. The ordinary rules of law applying to the appropriation of surface streams do not apply to percolating water and subterranean streams, with

undefined and unknown courses and banks." Kinney on Irrigation, Sec. 48; Wash. Easements and Serv., p. 505, par. 2; *Hanson* v. *Mc Cue,* 42 Cal., 303; *Roath* v. *Driscoll,* 20 Conn., 532; *Haldeman* v. *Bruckhandt,* 45 Pa. St., 514; *Acton* v. *Blundell,* 12 M. & W., 324; *Taylor* v. *Welch,* 6 Ore., 199; *Southern Pac. R. R. Co.* v. *Dufour,* 95 Cal., 615; *Ocean Grove* v. *Asbury Park,* 40 N. J. Eq., 447; *The Village of Delhi* v. *Youmans,* 45 N. Y., 362; *Williams* v. *Ladew,* 161 Pa. St., 283; *Mosier* v. *Caldwell,* 7 Nev., 363; *Chase* v. *Silverstone,* 62 Me., 175; *Chatfield* v. *Wilson,* 28 Vt., 49; *Trustees, etc.,* v. *Youmans,* 50 Barb., 316.

It appearing, in the case at bar, that at the time of the conveyance of the land by the government, the water in question was not visible thereon, nor its existence known, and there being nothing to show that it flowed thereon at any previous time, or that there was at the time of the purchase any well defined and known subterranean stream there, the presumption is that the water was percolating through the earth, and that the stream in question is the result of filtration or percolation; and the water having commenced to flow after the patent was issued, it belongs, under the authorities, as we have seen, to the respondent or owner of the land as a part thereof. The water was, therefore, not subject to appropriation under any statute or rule of law, and by its use the appellant acquired no title to it. Hence the respondent had the lawful right to divert and use the water in such manner as she chose, and may continue to do so. The court committed no error in deciding this case in her favor.

The judgment is affirmed with costs.

MC CARTY, Dist. Judge, concurs.

BASKIN, J., concurs in the result.